UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL FROST,<br><br>Defendant. | 3:18-CR-30132-RAL<br><br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

A federal grand jury returned an indictment charging Paul Frost (Frost) with one count of possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C), and two counts of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), 924(a)(2) and 924(d). Doc. 1. Frost pleaded guilty to the drug charge and to one of the firearm charges in exchange for the Government's promises to dismiss the second firearm charge and to not file an information pursuant to 21 U.S.C. § 851, alleging that Frost had a prior felony drug conviction. Docs. 36 at 8; 41. If the Government had filed a 21 U.S.C. § 851 information, the maximum penalty for the drug conviction would have increased by ten years imprisonment and one million dollars as well as required an additional three years of supervised release. See 21 U.S.C. § 841(b)(1)(C).

This Court conducted a sentencing hearing for Frost on July 29, 2019. After considering the sentencing factors in 18 U.S.C. § 3553(a), this Court departed downward from the applicable

1

sentencing guideline range and imposed concurrent 24-month custody sentences and concurrent three years of supervised release terms on each count of conviction. Docs. 52; 54 at 2. Frost began serving his sentence at the low security correctional institution Federal Corrections Institution Butner Low (LSCI Butner) in September 2019. Frost now moves this Court for compassionate release citing his health conditions in combination with the global COVID-19 pandemic ravaging the country and its correctional institutions, Doc. 69, and the Government opposes this motion, Doc. 77. For the reasons that follow, this Court denies Frost's motion for compassionate release.

### I.   Background

Frost was convicted of two serious crimes in this case. Doc. 54. In 2018 he received distributable amounts of methamphetamine and utilized other people to help him distribute the drug. Doc. 37. On the date that a search warrant was executed at his residence, law enforcement found 21 grams of methamphetamine, numerous items of drug paraphernalia, a large quantity of marijuana, multiple cell phones, and more than $17,000 in United States currency. Doc. 46 at ¶ 8. Law enforcement also located a semiautomatic pistol and ammunition. Id. After his arrest, Frost admitted the offenses in a timely fashion and indicated that he had been motivated by greed. Id. at 14.

At his sentencing hearing, this Court considered Frost's calculated guideline range of 33 to 41 months custody and applied the 18 U.S.C. § 3553(a) sentencing factors. Doc. 63. This Court considered the nature and circumstances of the offense and the need for the sentence to reflect the offense's seriousness, promote respect for the law, provide deterrence to criminal conduct, and to provide just punishment. Id. When making this assessment this Court remarked that given the seriousness of the offense, the guideline range seemed a bit low. Id. at 4. This Court also considered the history and characteristics of Frost and paid particular attention to his severe

medical conditions. Id. at 3. The presentence investigation report prepared in advance of Frost's sentencing detailed his many medical problems, and this Court noted during his sentencing hearing his multiple heart issues and noted that he had other health issues including chronic obstructive pulmonary disease (COPD). Docs. 46 at ¶ 75-76; 63 at 3. This Court expressed the difficulty of sentencing someone with such severe medical issues, but remarked that defendants can receive quality care at Bureau of Prisons (BOP) medical facilities. Doc. 63 at 5-6. Ultimately, this Court determined that a custody sentence was required under the sentencing factors and found that a downward departure based on § 5H1.4, the physical condition of the defendant, was warranted. Id. at 6. This Court imposed a sentence of 24 months custody on each count to be served concurrently and 3 years of supervised release on each count to run concurrently. Id. at 6-7.

Frost is currently incarcerated at LSCI Butner and still suffers from many severe medical conditions. According to his BOP medical records, Frost is 48 years old and suffers from type 2 diabetes mellitus, hyperlipidemia, sleep apnea, polyneuropathy, hypertension, cardiomyopathy, acute upper respiratory infection, COPD, asthma, follicular cyst of the skin and subcutaneous tissue, and has the presence of aortocoronary bypass graft. Doc. 72 at 86-87. He has had multiple heart attacks and heart procedures in the past. Doc. 67 at 14. While in custody, Frost was seen by Dr. Eric Moore for his severe coronary artery disease, and Dr. Moore noted found that "Mr. Frost is an unfortunate gentleman with multiple medical problems, including severe coronary artery disease, severe systolic heart failure, severe obstructive sleep apnea, and severe COPD with severe restrictive lung disease." Doc. 66 at 200. He continues to take multiple medications while in prison for his many ailments. Docs. 66 at 45-47; 69-1.

Since Frost began his period of incarceration in September 2019, a new and mysterious illness, COVID-19, developed in Asia and quickly spread around the world. COVID-19 is a virus

3

that can be spread easily from person-to-person primarily between individuals who are in close contact with one another and through the respiratory droplets of infected individuals. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited July 2, 2020). It may also be spread by individuals who show no symptoms. Id. One of the most mysterious aspect of the disease is how it can affect individuals in significantly different ways and severities. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited July 2, 2020). Everyone is susceptible to COVID-19, but individuals who are over age 50 or who have underlying medical conditions like COPD, serious heart conditions like coronary artery disease, and type 2 diabetes mellitus are at an increased risk of becoming severely ill from the disease. See Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited July 2, 2020). Additionally, individuals with asthma and hypertension might be at increased risk for a severe form of the illness. Id. Frost has each of these ailments.

LSCI Butner is a BOP facility that has been exceptionally hard hit by the novel coronavirus COVID-19. According to the BOP reporting website, there are 567 inmates and five staff members positive with the virus, and 117 inmates and eleven staff who have recovered from the disease. See Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 1, 2020).[1]

---

[1] This number is high, but it likely overrepresents the number of LSCI general population inmates who have contracted the disease. FCC Butner is a federal prison complex that houses five separate institutions, one of which is LSCI Butner. Doc. 77-2 at ¶ 5. Prior to COVID-19, LSCI Butner had a special housing unit that had not been housing any inmates. Doc. 77-1 at ¶ 77. Once COVID-19 precautions were put in place, this unit became used for quarantine and isolation purposes for inmates from other institutions in the complex. Doc. 77-1 at ¶¶ 77-80. According to Mary Strassel, a member of the FCC Butner COVID-19 response team, "LSCI numbers portrayed on the BOP website throughout the pandemic ha[ve] included inmates transferred to the LSCI [secure housing unit]," from other complex institutions, "for quarantine and isolation purposes in units specifically

Unfortunately, the facility has reported 14 inmate deaths and one staff death. Id. The BOP has taken several steps to try and curb the spread of COVID-19 in its facilities. See Doc. 77-1. However, given the basic structure of correctional facilities, it has proven difficult to stifle the spread, and on June 1, 2020, the decision was made to test all inmates at LSCI Butner due to an increase in the number of COVID-positive inmates. Doc. 77-1 at ¶ 82. Frost was tested as part of this mass testing, and his test came back positive for COVID-19. Doc. 76 at 3. Although Frost's medical records indicate that before being tested he denied all COVID-19 related symptoms during precautions screenings, there is no information concerning the current severity of his illness. Doc. 66 at 145.

Frost submitted a handwritten request for a reduction in sentence to the warden of his institution on April 21, 2020. Doc. 66 at 1. This Court is unaware if he received a response to that request. Nevertheless, a similar request was submitted to the warden on Frost's behalf on May 4, 2020, and was denied by the warden on May 11, 2020, because Frost was "independent of [his] activities of daily living and [his] current medical conditions remain[ed] under control." Doc. 66 at 4-5. Frost then filed a motion for compassionate release with this Court. Doc. 69. Frost has now served more than ten months of his 24-month sentence and has a projected release date of May 29, 2021. Docs. 66 at 252; 72 at 247, 249.

II.     **Legal Standard for Compassionate Release**

A "court may not modify a term of imprisonment once it has been imposed," except in a few, narrowly defined circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as

---

designated for these purposes. Thus, they did not necessarily always reflect the true presence of COVID-19 in the LSCI general population." Doc. 77-2 at ¶ 64 n.4.

5

amended by the First Step Act of 2018, places some limitations on when a court may grant such motions. The compassionate release statute in pertinent part provides that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1). Frost submitted a request to the warden of his institution on April 21, 2020, and again on May 4, 2020. More than 30 days have passed since the warden received either of these motions. Therefore, Frost's motion is properly before this Court for determination. After reviewing Frost's sentencing materials and the materials submitted in support and opposition to his motion, this Court finds that the circumstances are not so extraordinary and compelling to grant him compassionate release at this time.

### III. Discussion

In determining whether compassionate release is justified in Frost's case, this Court must determine whether "extraordinary and compelling reasons" warrant a sentence reduction. Congress has not defined what constitutes "extraordinary and compelling reasons," but has left it to the Sentencing Commission to promulgate such criteria and to provide examples. 28 U.S.C. § 994(t). The Sentencing Commission set forth certain scenarios that would constitute

6

"extraordinary and compelling reasons" in the commentary to Federal Sentencing Guideline § 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the age of the defendant in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also provided that other reasons may constitute extraordinary and compelling reasons for release "[a]s determined by the Director of the Bureau of Prisons." U.S.C.G. § 1B1.13 cmt. n.1(D). However, the Sentencing Commission, lacking a quorum, has been unable to update these provisions since Congress passed the First Step Act which allowed courts to consider compassionate release motions brought by someone other than the Director of the BOP. This has caused district courts to question whether the policy statement still applies, and specifically whether courts may consider other reasons for release that have not been brought by the Director of the BOP. See Mondaca, 2020 WL 1029024, at *3 (discussing the discord among district courts); Spears, 2019 WL 5190877, at *3 (same); United States v. Brown, 411 F. Supp.3d at 449-50 (same). Several district courts considering the issue have determined that the discretion given to the Director of the BOP in § 1B1.13 comment note 1(D) also allows federal judges to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the catch-all provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Frost argues that he qualifies for compassionate release under either § 1B1.13 comment note 1(A)(ii) or comment note 1(D). Comment note 1(A)(ii) provides that extraordinary and compelling reasons exist when "[t]he defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes"

7

his ability to "provide self-care within the environment of a correctional facility and from which he ... is not expected to recover." U.S.S.G. § § 1B1.13 cmt. n.1(A)(ii). Frost's argument under comment note 1(A)(ii) focuses on how the conditions of confinement make Frost unable to exercise the social distancing necessary to provide self-care. However, the language of comment note 1(A)(ii) contemplates that it is the defendant's condition, impairment, or health that make him unable to provide self-care in the facility. Frost does not claim that his medical conditions make it impossible for him to exercise self-care; rather he relies on the conditions of confinement and the inability to provide the type of self-care recommended as the basis for relief under this note. Certainly, Frost's conditions of confinement and his medical conditions are factors that this Court considers in assessing whether other extraordinary and compelling reasons exist under comment note 1(D).

There can be no doubt that the effect of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The question becomes whether Frost's medical conditions—type 2 diabetes mellitus, hyperlipidemia, sleep apnea, polyneuropathy, hypertension, cardiomyopathy, acute upper respiratory infection, COPD, asthma, severe coronary artery disease, and severe systolic heart failure—combined with the crowded conditions of confinement justify compassionate release.

Here the existence of COVID-19 does not prompt this Court to find extraordinary and compelling circumstances for Frost's release. First, this Court last year considered all of Frost's medical issues in departing downward from the 33 to 41 month guideline range to impose a sentence of merely 24 months concurrent for possession with intent to distribute methamphetamine (which carries a statutory maximum of 20 years custody) and possession of a firearm by a prohibited person (with a statutory maximum of 10 years custody). This Court used U.S.S.G. § 5H1.4 to depart downward accounting for his serious medical conditions that appear to persist largely unchanged now. Frost has tested positive for COVID-19, but he appeared to be asymptomatic leading up to testing and by this point presumably has recovered fully and has some antibodies.[2] While Frost's medical conditions remain quite serious, the added factor of COVID-19 does not cause this Court to think any differently about the below guideline range sentence of 24 months being adequately compassionate under the circumstances.

This Court appreciates the dangers associated with COVID-19, and it sympathizes with Frost's condition. However, even when considering the exceptional circumstances created by COVID-19, a sentence reduction in the manner Frost proposes would not be sufficient to reflect the seriousness of his offense, to promote respect for the law, or to provide just punishment under 18 U.S.C. § 3553(a).

**IV. Conclusion and Order**

---

[2] Although no daily documentation of Frost's symptoms has been provided to this Court, the most recent medical records filed indicate that Frost has a confirmed case of COVID-19 with the code U07.1. Doc. 76 at 3. The Centers for Disease Control and Prevention direct that all confirmed cases of COVID-19 be coded as U07.1. Centers for Disease Control and Prevention, https://www.cdc.gov/nchs/data/icd/COVID-19-guidelines-final.pdf?fbclid=IwAR06h6zP8Kkeh NzjEqlpGvACzMBhP26Khp9WG1JqbfLUQpYOt_LCqwGVHxU (last visited July 9, 2020). It also directs that individuals who have developed certain complications to the illness should have additional codes listed. Id. Because Frost's medical documents list only the U07.1 code, it is presumed he has been asymptomatic and has not developed severe complications due to the illness.

For good cause, it is hereby

ORDERED that Frost's motion for compassionate release, Doc. 69, is denied.

DATED this 9th day of July, 2020.

                              BY THE COURT:

                              ROBERTO A. LANGE
                              CHIEF JUDGE